IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NOE MANCILLAS, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. SAG-22-2767 |
| FEDERAL BUREAU OF PRISONS and UNITED STATES OF AMERICA,[1] | * | |
| | * | |
| Respondents. | | |

\*\*\*

**MEMORANDUM OPINION**

Noe Mancillas, a federal prisoner, filed a Petition for habeas corpus relief pursuant to 28 U.S.C. § 2241, seeking the ability to earn and apply Earned Time Credits ("ETCs") pursuant to the First Step Act of 2018 ("FSA"), P.L. 115-391, § 102(b)(1), 132 Stat 5194, 5210 (Dec. 21, 2018). ECF No. 1 at 5-6. Presently, Mancillas is unable to earn ETCs due to a disqualifying prior conviction. *Id.* at 2. If the Court were to grant the relief Mancillas seeks, he asserts that it would result in his "immediate release." *Id.* at 4.

Pursuant to the Court's Order directing Respondent to file a response to the Petition (ECF No. 3), Respondent filed a Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 6). Mancillas was advised of his right to respond (ECF No. 7) and did so on January 25, 2023 (ECF No. 9).

Having reviewed the papers, and finding no hearing necessary, *see* Md. Loc. R. 105.6 (D.

---

[1] The proper respondent in an action for habeas corpus is Mancillas's custodian. *See* 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36 (2004). The Warden of Federal Correctional Institution – Cumberland, where Mancillas was incarcerated when his Petition was filed, would have been the proper Respondent in this case. The Clerk shall amend the docket accordingly. Respondents argue that Mancillas's Petition should be denied for naming the incorrect Respondent. *See* ECF No. 6-1 at 2-3. Recognizing that Mancillas proceeds pro se, and therefore affording the Petition a liberal construction, *see White v. White,* 886 F.2d 721, 722-23 (4th Cir. 1989), the Court will not deny the Petition on this basis alone, and will instead reach the merits of Mancillas's claim.

Md. 2023), the court grants Respondent's Motion to Dismiss, or in the Alternative for Summary Judgement, and denies the Petition for writ of habeas corpus.

**I.      Background**

On December 17, 1997, Mancillas was sentenced in the United States District Court for the Southern District of Indiana in case number 1:97cr00064-00. Decl. of Misty Shaw, ECF No. 6-2 at 3, 7, 18. He was sentenced to 180 months of imprisonment followed by a three-year term of supervised release for, as is relevant here, Possession of a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c), among other offenses. *Id.* at 3, 19-20 (the "§ 924(c) conviction"). His federal term of imprisonment for that conviction began on February 12, 1998. *Id.* at 3. Mancillas was released from incarceration and began his three-year term of supervised released on May 24, 2010. *Id.* He was forewarned that, while on supervised release, he must "not commit another federal, state, or local crime." *Id.* at 20.

Shortly thereafter, while on supervised release, Mancillas reoffended. *Id.* at 3. Specifically, 12 days later, on June 5, 2010, Mancillas committed his instant offense, Conspiracy to Possess with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Id.* at 3, 31. For that offense, Mancillas was sentenced to 204 months' imprisonment on November 13, 2013 (the "current sentence"). *Id.* at 3, 32.

Importantly, because Mancillas was on supervised release at the time he reoffended, his three-year supervised release term for his 1997 § 924(c) conviction was revoked and he was sentenced to a 24-month term of imprisonment, which was ordered to run concurrently with any other sentence of imprisonment. *Id.* at 3, 8, 39. He began serving this 24-month sentence on January 22, 2014. *Id.* at 3, 8.

On November 22, 2019, the Bureau of Prisons ("BOP") reviewed Mancillas's records to determine his eligibility for ETCs under the FSA and determined that, "based on his current

2

offenses," he was "ineligible to receive [ETCs], because of his § 924(c) conviction." *Id.* at 3.

Based on the foregoing, Mancillas asserts that his incarceration for violating his supervised release "expired on November 14, 2015," and thus the sentence has been served. ECF No. 1 at 2. Mancillas argues that the Court should treat his current sentence and the sentence he received for violating his supervised release for the § 924 conviction as distinct sentences for the purpose of eligibility for ETCs under the FSA, despite the fact that the sentences were set to run concurrently. *Id.* at 4. As relief, he seeks eligibility for, and application of, ETCs pursuant to the FSA. *Id.* at 5.

Respondent counters that Mancillas is not entitled to the credit he seeks, arguing that his two sentences were properly aggregated, and he is precluded from earning ETCs under the FSA based on his conviction under § 924. *See* ECF No. 6-1. Further, Respondent argues that the BOP "reasonably interpreted 18 U.S.C. § 3632(d)(4)(D) to preclude FSA time credits for [Mancillas] because of his § 924(c) conviction," and that interpretation is entitled to deference. *Id.*

Mancillas responded and challenges the Respondent's arguments. *See* ECF No. 9. Mancillas appears to view the sentence imposed for violating the terms of his supervised release as wholly unrelated to his underlying § 924(c) conviction, noting that "[n]owhere in the court record does the judge indicate that the 24-month sentence for the petitioners [sic] probation violation was in relation to the previous § 924(c) gun enhancement charge." *Id.* at 3. He also asserts that treating concurrent sentences as one aggregate sentence for the purpose of earning ETCs under the FSA violates the "concurrent sentence doctrine." *Id.* He states that "[t]o disallow all FSA time credits for a violation which happened over 30 years ago and which was served by the petitioner over 13 years ago is beyond any reasonable interpretation of what congress [sic] could have meant by excluding § 924(c) charges from receiving FSA time credits." *Id.* at 3-4.

## II.     Motion to Dismiss or for Summary Judgment

### A. Standards of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from

proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

  **B.  The First Step Act**

  The FSA governs the calculation of federal prison sentences.  Section 102(b) of the FSA amended 18 U.S.C. § 3624(b), allowing federal inmates to earn additional good time credits.  *See* P.L. 115-391, § 102(b)(1).  The FSA, among other things, allows the BOP to award inmates a maximum of 54 days of good time credits per year of their imposed sentence rather than 54 days of credit per year of their sentence served.  *See Pizarro v. White*, 2019 WL 1922437, at *1 (M.D. Pa. Apr. 30, 2019).

  The FSA was enacted on December 21, 2018.  *See* 18 U.S.C. § 3632.  Within 210 days of enactment, the Attorney General was charged with developing and releasing a Risk and Needs Assessment System ("the System").  *Id.*  The System is for:  (1) determining an inmate's risk of recidivism; (2) assessing an inmate's risk of violence or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs") as needed; (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release.  *See id*. § 3632(a). Further, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs."  *Kurti v. White*, No. 1:19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).

  The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive ETCs to be applied toward time in pre-release custody or supervised release.  *See* 18 U.S.C. §

3632(d)(4)(A). To be eligible to earn ETCs, inmates must not have a conviction for a disqualifying offense. *See* 18 U.S.C. § 3632(d)(4)(D). Relevant here, a "prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction" under "Section 924(c), relating to unlawful possession or use of a firearm during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 3632(d)(4)(D)(xxii).

If eligible, an inmate may earn ten (10) days of credit for every thirty (30) days of successful participation in EBRRs or PAs. *See* 18 U.S.C. § 3632(d)(4)(A). Additionally, eligible inmates who have been assessed at a minimum or low risk of recidivism, who maintain their low risk of recidivism over two (2) consecutive assessments, may earn an additional five (5) days of time credit for every thirty (30) days of successful participation. *See id.*

On July 19, 2019, the System was released for use throughout the BOP in compliance with the timeline set in the FSA. *See Holt v. Warden,* 539 F. Supp. 3d 1005, 1010 (D.S.D. 2021). Thereafter, within 180 days, the BOP was to implement and complete an initial intake risk and needs assessment for each prisoner. 18 U.S.C. § 3621(h)(1)(A). On January 15, 2020, the BOP announced that all inmates had been screened using the System, known as the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). *Holt*, 539 F. Supp. 3d at 1010. The implementation phase of the FSA, a two-year phase-in period for providing EBRRs and PAs, commenced after all inmates had been screened. 18 U.S.C. §§ 3621(h)(2)–(3). During the phase-in period, the BOP had until January 15, 2022, to provide EBRRs and PAs to all inmates. *Id*. § 3621(h)(2).

On January 19, 2022, the BOP published and codified its "procedures regarding the earning and application of Time Credits as authorized by the First Step Act of 2018" (the "January Final Rule"). *See* FSA Time Credits, p.1, 87 Fed. Reg. 12, 2705 (January 19, 2022) (codified at 28 C.F.R. pt. 523). Importantly for Mancillas's case, the BOP procedures follow the requirements

articulated in § 3632(d)(4)(D), which establishes that inmates who are serving time for convictions under § 924(c) are ineligible to earn ETCs under the FSA. Following the opportunity for notice and comment, the BOP clarified that

> 18 U.S.C. § 3632(d)(4)(D) describes inmates that are 'ineligible to receive time credits' under subchapter D (the Risk and Needs Assessment System) if serving a term of imprisonment for conviction under any of the provisions listed therein. *It is outside the Bureau's authority to alter the exclusions as stated in the FSA . . . . Statutory exclusions may only be amended by Congress*.

*See id.* at 2713 (emphasis added). The BOP codified its procedures at 28 C.F.R. § 523.41(d), which states that "[a]ny inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is eligible to earn FSA time credits, subject to the exception described in paragraph (d)(2) of this section." Section 523.41(d)(2) explains that if the "inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. 3632(d)(4)(D)," which includes sentences imposed under § 924(c), "the inmate is not eligible to earn FSA time credits." *Id.*, *see also* § 3632(d)(4)(D)(xxii).

On November 18, 2022, the BOP published BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d). *See* BOP Program Statement 5410.01. This Program Statement implements the January Final Rule, and further clarifies the BOP's procedures for awarding and applying ETCs under the FSA. *Id.* Relevant here, the BOP again confirmed that inmates serving certain offenses enumerated in the FSA, including convictions under §924(c), are ineligible to receive ETCs. *See id.* at 6-7.

### C. Entitlement to Credits

The BOP is entitled to deference in the application of FSA ETCs. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 865 (1984). Courts defer to an agency's interpretation of a statute when Congress has "charged [the agency] with responsibility for administering the provision[.]" *See Chevron*, 467 U.S. at 865; *see also Smiley v. Citibank, N.A.*, 517 U.S. 735, 739 (1996) ("It is our

practice to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes that they are charged with administering."). There exists a "presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley*, 517 U.S. at 740-41.

An agency's interpretation of a statute it administers is always given some judicial deference, but the deference level varies. When Congress gives authority to an agency to make rules with the force of law, and the agency acted pursuant to that delegated authority in interpreting the statute, then courts review the agency's interpretation under the standards articulated in *Chevron*. *See United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). The *Chevron* standard provides that where the statute being interpreted by the agency is silent or contains ambiguity, courts give deference to the agency's interpretation if it "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 845; *see also Lopez v. Davis*, 531 U.S. 230, 242 (2001) (holding the BOP had the authority to fill the "statutory gap" in § 3621(e)'s early release provision in a reasonable manner in light of the Congress' "revealed design"). Therefore, if 18 U.S.C. § 3632(d)(4)(D), at issue here, is clear, the BOP must apply it as written. However, if ambiguity exists, "the question for the court is whether" the BOP's interpretation of 18 U.S.C. § 3632(d)(4)(D) is reasonable and reflects a "permissible construction of the statute." *Chevron*, 467 U.S. at 843. "The Court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding"; the question is simply the reasonableness of the agency's construction. *Id.*

Although it may appear straightforward at first blush, Mancillas's Petition highlights that ambiguity exists as to what was meant by "serving a sentence" for certain convictions, thus rendering an individual ineligible to earn ETCs under 18 U.S.C. § 3632(d)(4)(D).  As this Petition makes clear, questions arise as to whether a sentence imposed following the revocation of supervised release for § 924(c) makes an inmate ineligible to earn ETCs, whether inmates are still ineligible to earn ETCs after the disqualifying sentence has been fully served, and relatedly, whether the aggregating of multiple sentences is an appropriate basis for denying an inmate the ability to earn FSA credits.

Here, Mancillas was originally sentenced in December 1997 for the § 924(c) offense.  Upon release, he was ordered to serve three years of supervised release for that, and other, offenses.  Shortly after his release from incarceration, and while actively under supervision for those offenses, Mancillas reoffended by committing his instant offense under 21 U.S.C. §§ 841(a)(1) and 846.  He received a sentence of 204 months' imprisonment for that conviction.  Importantly, because he was on supervised release at the time he reoffended, pursuant to 18 U.S.C. § 3583(e)(3), his three-year supervised release term stemming from his § 924(c) conviction was revoked.  Because he had not completed his supervised release term when he reoffended, the sentencing court required him to serve an additional 24 months for his § 924(c) conviction, pursuant to 18 U.S.C. § 3583(e), which provides in pertinent part that the court may:

> (3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised *release authorized by statute for the offense that resulted in such term of supervised release* without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. . . .

18 U.S.C. § 3583(e)(3) (emphasis added).  Therefore, when Mancillas's supervised release was revoked and additional incarceration time was imposed, it was related to and stemmed from his

9

underlying conviction, which included a conviction under § 924(c). On that basis, the BOP found him ineligible to earn ETCs under the FSA. This is a reasonable construction of the statute, and the BOP is entitled to deference on this interpretation.

Similarly, the Court that revoked Mancillas's term of supervised release and imposed additional prison time indicated that the reinstated sentence was to run concurrently to any sentence then-imposed. 18 U.S.C. § 3584 addresses multiple sentences of imprisonment and specifically provides that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c). Further, the BOP has clarified in Program Statement 5880.28, Sentence Computation Manual, that "SRA [Sentencing Reform Act] sentences, including a term of imprisonment that results from a revocation of supervised release or probation, shall be aggregated to form a single sentence for computation purposes." Thus, the BOP treated Mancillas's new sentence, and the sentence stemming from the revocation of his supervised release for his § 924(c) conviction, as one aggregate term of imprisonment.

Moreover, other courts have noted that:

> the BOP's interpretation of § 3632(d)(4)(D) is not only reasonable, but it appears to be a mandatory interpretation based on the BOP's other statutory obligations. Title 18 U.S.C. § 3584(c) provides that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." Courts have consistently held that sentence calculation by the BOP and the BOP's administration of incentives which reduce the length of a prisoner's term of imprisonment are administrative functions of the BOP subject to § 3584(c).

*Sok v. Eischen*, No. 22-CV-458 (ECT/LIB), 2022 WL 17156797, at *5 (D. Minn. Oct. 26, 2022), *report and recommendation adopted*, No. 22-CR-458 (ECT/LIB), 2022 WL 17128929 (D. Minn. Nov. 22, 2022). Therefore, even when the sentence stemming from the § 924(c) conviction had been fully served day for day, it still acted as part of an aggregate sentence barring Mancillas from

eligibility to earn ETCs. This is a permissible and reasonable construction of the statute, and thus is entitled to deference.

**III.     Conclusion**

Mancillas is prohibited from receiving credit under the FSA due to his § 924(c) conviction and sentence. Accordingly, this Court will deny Mancillas's request for habeas relief. Respondent's motion to dismiss, or in the alternative for summary judgment (ECF No. 6), will be granted.

A separate Order follows.

<u>August 22, 2023</u>                                         <u>         /s/                                   </u>
Date                                                          Stephanie A. Gallagher
                                                              United States District Judge